IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSEPH ANTONIO FERRUFINO GUERRERO,<br><br>Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, in their official capacity as Secretary of the United States Department of Homeland Security; TODD BLANCHE, in their official capacity as Acting Attorney General of the United States; TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; DAVID EASTERWOOD, in their official capacity as Acting St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and CAROLYN SOMMER, in their official capacity as in their official capacity as Acting Warden of McCook ICE Detention Center;<br><br>Respondents. | | 4:26CV3146<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Joseph Antonio Ferrufino Guerrero's petition for a writ of habeas corpus. (Filing No. 1). Ferrufino Guerrero, a noncitizen facing removal from the United States, is detained by U.S. Immigrations and Customs Enforcement. He alleges his due process rights were violated when he was re-detained after being released on recognizance into the United States. For the reasons set forth below, his petition will be granted in part and denied in part.

## BACKGROUND

Ferrufino Guerrero is a Nicaraguan national and citizen. (Filing No. 1 at 1-2). He fled from Nicaragua "to the United States seeking respite from political persecution and physical torture." (Filing No. 1 at 7). Ferrufino Guerrero entered the United States near Eagle Pass, Texas in March 2024, seeking asylum here. (Filing No. 1 at 12, Filing No. 1-1 at 4). He was detained by U.S. Immigration and Customs Enforcement (ICE) at the border. (Filing No. 1 at 12). While detained, Ferrufino Guerrero gave a credible fear interview. (Filing No. 1 at 12). ICE determined that Ferrufino Guerrero "was credible, that there was a reasonable possibility of torture or persecution or a credible fear of persecution established," and "that there was no apparent bar to asylum or withholding of removal." (Filing No. 1 at 12-13). That finding paved the way for his release: ICE enrolled him in its Alternatives to Detention (ATD) program, which allows ICE to "monitor[ ] non-detained immigrants awaiting court hearings as an alternative to detention." (Filing No. 1 at 4).

Ferrufino Guerrero was released in April 2024 on an order of recognizance. (Filing No. 11-1). That order advised Ferrufino Guerrero he was being "released on [his] own recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]" subject to several conditions. (Filing No. 11-1 at 1). One was Ferrufino Guerrero's "successful participation in an Alternatives to Detention program[.]" (Filing No. 11-1 at 1). "As part of that program," Ferrufino Guerrero was "subject to electronic monitoring and may be subject to a curfew." (Filing No. 11-1 at 1, 5). The order warned "[f]ailure to comply with the conditions of this order may result in revocation of your release and detention by [ICE]." (Filing No. 11-1 at 1). Around ten months later, ICE initiated removal proceedings against Ferrufino Guerrero and issued him a notice to appear. (Filing No. 1-2).

Though ICE never formally revoked Ferrufino Guerrero's order of release on recognizance, there is evidence he did not always comply with its conditions. According to ICE Deportation Officer Daniel Archer, Ferrufino Guerrero amassed thirteen "ATD violations for missing biometric check[-]in[s]" between August 2024 and September 2025 and missed two "scheduled home visit[s]." (Filing No. 6 at 4). For his part, Ferrufino Guerrero says there were only "two times" he missed the biometric check-ins. (Filing No. 11 at 2). That happened, he explains, because he was "work[ing] the night shift" and "sle[pt] during the day." (Filing No. 11 at 2). After the second time, ICE summoned him to an office and placed him on an ankle monitor. (Filing No. 11 at 2). In any

2

event, there is no evidence ICE took further action—beyond the ankle monitor—against Ferrufino Guerrero in response to any violations under the ATD program. Ferrufino Guerrero then "switched to a different work schedule" so he would not miss any further check-ins. (Filing No. 11 at 2).

Ferrufino Guerrero remained released until April 2026, when he was arrested in Omaha, Nebraska. (Filing No. 1 at 4). Ferrufino Guerrero was "test driving a car from a friend" that had recently repossessed the car. (Filing No. 11 at 3). The previous owner "reported it stolen," leading the police to "pull[ ] [Ferrufino Guerrero] over and arrest[ ] [him]." (Filing No. 11 at 3). Though the charges were dismissed the next day, the police "turned [Ferrufino Guerrero] over to ICE" because ICE had issued a detainer and an administrative warrant for Ferrufino Guerrero's arrest. (Filing No. 11 at 3; Filing No. 6 at 4). After re-detaining Ferrufino Guerrero, ICE transferred him to the McCook Detention Center in McCook, Nebraska, where he remains. (Filing No. 1 at 2).

Ferrufino Guerrero sought release on bond during the pendency of his removal proceedings. Relying on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the immigration judge concluded he had "[n]o jurisdiction" and denied Ferrufino Guerrero's request. (Filing No. 1-4 at 1).

In response, Ferrufino Guerrero seeks a writ of habeas corpus from this Court. Ferrufino Guerrero alleges his re-detention violated his "due process rights under the Fifth Amendment of the United States Constitution and the plain language of the Immigration and Nationality Act[.]" (Filing No. 1 at 5). He seeks immediate release or, in the alternative, an order requiring the Respondents to provide adequate due process or an individualized hearing on revocation of ATD within seven days. (Filing No. 1 at 18).

The Court directed Ferrufino Guerrero to serve his petition on Respondents (Filing No. 3) and ordered Respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[1] did so (Filing No. 4) and Ferrufino Guerrero replied (Filing No. 9). The parties advised the court that a hearing is not

---

[1] The Federal Respondents include all but Acting Warden of the McCook ICE Detention Center Carolyn Sommer. (Filing No. 4 at 4 n.1). Acting Warden Sommer filed a separate response taking no position "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 14 at 2).

necessary. Therefore, the Court considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, v 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Ferrufino Guerrero bears the burden to show that he is in custody in violation of the law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Federal Respondents argue Ferrufino Guerrero cannot make such a showing. In their view, Ferrufino Guerrero's detention is authorized under 8 U.S.C. § 1225. (Filing No. 4 at 5). The Eighth Circuit's decision in *Avila*, they argue, is "is controlling precedent and dictates a broad application of 8 U.S.C. § 1225 that plainly includes [Ferrufino Guerrero] and millions of aliens, regardless [of] whether they were initially paroled into the United States." (Filing No. 4 at 7).

The Court disagrees with that reading of *Avila*. As it has explained before, this case is different because Ferrufino Guerrero was arrested at the border, detained, and released on his own recognizance under 8 U.S.C. § 1226. *See Sandhu v. Mullin*, 2026 WL 1146643 (D. Neb. Apr. 28, 2026). *Avila* foreclosed any argument Ferrufino Guerrero had that he is entitled to a bond hearing on statutory grounds, but it left open the question of whether his re-detention comports with due process. *See* 170 F.4th at 1141 n.8 (Erickson, J., dissenting).

For many of the same reasons the Court outlined in *Sandhu,* it did not. The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V.  It applies to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001).  Procedural due process claims "are examined under

a two-part test: 'whether there exists a liberty or property interest which has been interfered with by the government'; and 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Cent. Specialties, Inc. v. Large*, 482 F. Supp. 3d 886, 895 (D. Minn. 2020), *aff'd,* 18 F.4th 989 (8th Cir. 2021) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

In the immigration context, however, "the nature of [due process] protection may vary depending upon [immigration] status and circumstance." *Id.* Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.,* 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306, (1993)). But because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "has more flexibility when dealing with immigration." *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)).

The proper framework for evaluating Ferrufino Guerrero's due process arguments "is not well settled." *Singh v. Mullin, et al.,* 2026 WL 1021846, at *3 n.5 (N.D. Iowa Apr. 15, 2026). Some courts turn to the three-factor test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to determine what process is due. *But see Banyee,* 115 F.4th at 933 (holding that cases like *Zadvydas* and *Demore* "leave no room for a multi-factor 'reasonableness' test" and "have already done whatever balancing is necessary"). *Mathews,* however, was never intended as "an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). More to the point, the Supreme Court "has not relied on the *Mathews* framework" in "resolving similar immigration-detention challenges[.]" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore*, 538 U.S. at 521-31; *Reno*, 507 U.S. at 299-315). Indeed, the Supreme Court "has recently backed away from multi-factorial 'grand unified theor[ies]' for resolving legal issues. *Id.* (citing *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 534 (2022)) (citation modified).

The Supreme Court has instead generally recognized a spectrum of protections to noncitizens "depending upon status and circumstance." *Zadvydas*, 533 U.S. at 694 (citing *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982)). Status and circumstance, in turn, "is generalized to the class an alien finds themselves within." *Singh,* 2026 WL 1021846, at *3; *see, e.g., Landon*, 459 U.S. at 35 (re-entry of permanent resident noncitizens); *Zadvydas*, 533 U.S. at 690 (noncitizens

5

found to be removeable but who remain detained). As it did in *Sandhu,* the Court will apply that framework here. Whether Ferrufino Guerrero's re-detention comported with due process, then, turns on his status and circumstances for the class of noncitizens he finds himself within. *Singh,* 2026 WL 1021846, at *3. Key to that analysis is the fact he was initially detained but then released into the United States on his own recognizance.

At the threshold, it bears emphasizing that Ferrufino Guerrero's status and circumstances differ from the petitioners in *Avila.* There, the petitioner "entered the United States without inspection or admission"—put differently, they were not detained at the border. *Avila,* 170 F.4th at 1132, *Boubacar,* 2026 WL 972708, at *1. Ferrufino Guerrero was. (Filing No. 1 at 4). And if ICE was going to detain Ferrufino Guerrero "for removal proceedings, that was the time." *Silva v. Warden, Lincoln Cnty. Det. Ctr.,* 2026 WL 926725, at *1 (D. Neb. Apr. 6, 2026). But instead of keeping Ferrufino Guerrero in detention, ICE released him on his own recognizance on a Form I-220A under 8 U.S.C. § 1226(a)(2)(B). (Filing No. 11-1); *see, e.g., Ortega-Cervantes v. Gonzales,* 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a)."). Nothing in *Avila* permits the government to effectively recategorize scores of immigrants—like Ferrufino Guerrero—who were conditionally paroled under § 1226(a)(2)(B). *See Silva,* 2026 WL 926725, at *1. Nor, as the Court explains below, does the Fifth Amendment.[2]

The Court agrees Ferrufino Guerrero has a liberty interest in his continued release on his own recognizance. (Filing No. 9 at 7). To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey.*'" *Gonzalez-Fuentes v. Molina,* 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted). In *Morrissey v. Brewer*, the Supreme Court found that parolees enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be

_____

[2] As the Federal Respondents point out, there is something of an intra-district split on this issue. *Compare, e.g., Silva,* 2026 WL 926725 (holding that a petitioner's re-detention violated due process) *with Hernandez Muralles v. Mullin,* 2026 WL 1045729, at *3 n.5 (D. Neb. Apr. 17, 2026) (suggesting *Avila* applies equally to "parolees and those who enter without inspection"). Until the Supreme Court or Eighth Circuit rule otherwise, the Court concludes *Avila* does not bar a noncitizen's due process claim under circumstances like these.

revoked only if [they] fail[ ] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the court held that those released on criminal parole were entitled to due process before having their parole revoked. *Id.*

A noncitizen conditionally paroled into the United States, like Ferrufino Guerrero, is analogous to a criminal parolee. *Silva,* 2026 WL 926725, at *6. The liberty of a parolee "includes many of the core values of unqualified liberty" and its revocation inflicts the same "grievous loss on the parolee and often on others." *Id.* (citing *Morrissey,* 408 U.S. at 482). The government made Ferrufino Guerrero the same "implicit promise" that his liberty would "be revoked only if [he] fail[ed] to live up to the conditions of release" imposed by his order of his release on recognizance. *Morrissey,* 408 U.S. at 482; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (holding that [j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."). Thus, under *Morrissey* and its progeny, Ferrufino Guerrero has cleared the first hurdle on his due process claim by showing a liberty interest in his continued release on conditional parole. That liberty interest, "at the very least, entitles him to the procedures authorized by Congress." *Singh v. Noem*, 2026 WL 766228, at *6 (D.N.M. Mar. 18, 2026).

Based on the facts and circumstances of this case, the Court also finds that even the "minimal procedural due process rights [Ferrufino Guerrero] is statutorily afforded" were violated. *Id.* Under 8 U.S.C. § 1226(b), the government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* An implementing regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

There is no question the statute gives the government "immense discretion." *Singh,* 2026 WL 766228, at *8. But as the regulation shows, that discretion must be exercised by *someone*. Here, there is no evidence a "district director, acting district director, deputy district director,

7

assistant district director for investigations, assistant district director for detention and deportation, or officer in charge" exercised discretion to revoke Ferrufino Guerrero's conditional parole. In fact, the section of Ferrufino Guerrero's order of release on recognizance titled "Cancellation of Order" is blank. (Filing No. 11-1 at 1). That suggests "no officer, let alone a listed officer, revoked [Ferrufino Guerrero's] conditional parole." *Singh,* 2026 WL 766228, at *8. It appears, then, the government failed to comply with the statutory and regulatory regime governing revocation here. *See, e.g., Pena Becerra v. Sparks, et al.,* 2026 WL 915439, at *6 (D. Utah Apr. 3, 2026); *Sierra Immigr. & Naturalization Serv.,* 258 F.3d 1213, 1218 (10th Cir. 2001) (recognizing that a noncitizen is entitled to the "procedure authorized by Congress").

Beyond the *who* may revoke a noncitizen's order of release on recognizance, there must be a *why.* The Federal Respondents have made no showing of any changed circumstances justifying revocation of Ferrufino Guerrero's order of release on recognizance. True, he appears to have missed several biometric check-ins and home visits. (Filing No. 6 at 4; Filing No. 11 at 2). But ICE *did not revoke the order* in response to those violations. The evidence before the Court establishes Ferrufino Guerrero was only arrested—and then brought to ICE's attention—because of his arrest following a traffic stop. (Filing No. 6 at 4). And while the order of release on recognizance warned Ferrufino Guerrero he may be detained by ICE if he "violate[d] any local, State, or Federal laws or ordinances" (Filing No. 11 at 1), that did not happen here. The charges against Ferrufino Guerrero were dismissed—so there was no "violat[ion]" of state law to base revocation on. (Filing No. 11 at 3). Put simply, there is no evidence Ferrufino Guerrero's order of release on recognizance was revoked to begin with.

Further, even if the government did revoke Ferrufino Guerrero's order of release on recognizance, there is no evidence he was ever given notice or an opportunity to respond to its reasons for doing so, whatever they were. *Cf. Abdi v. Trump*, 2026 WL 560130, at *3 (D. Neb. Feb. 27, 2026) (noting that the government failed to afford a habeas petitioner "an opportunity to respond to the reasons for revocation stated in the notification because there were none"). Due process requires more. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

In sum, the Court finds that Ferrufino Guerrero has shown a liberty interest in his continued release on his own recognizance. Indeed, under the due process clause, "a person's liberty is equally protected even when the liberty itself is a . . . creation of the State." *Wolff v. McDonnell,*

418 U.S. 539, 558, (1974). Revocation of Ferrufino Guerrero's conditional parole and his re-detention—particularly without notice of the revocation and an opportunity to respond—fell short of the process he is due. Ferrufino Guerrero has therefore cleared the second hurdle on his procedural due process claim.[3]

Having found Ferrufino Guerrero entitled to habeas relief, the Court turns to the remedy. He seeks immediate release or, in the alternative, an order directing the Federal Respondents "to provide . . . an individualized hearing on revocation of ATD within 7 days[.]" (Filing No. 1 at 18). The Court concludes the latter is appropriate here.

When Ferrufino Guerrero was arrested at the border in March 2024, he was released into the United States on his recognizance under § 1226(a)(2)(B) with conditions to be followed to remain on release. His liberty interest in his continued release is protected by the process due under the statute and corresponding regulations. *See, e.g.,* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). There is evidence that Ferrufino Guerrero may have violated those conditions of release. (Filing No. 6 at 4; Filing No. 11 at 2). Indeed, ICE sanctioned Ferrufino Guerrero for missing scheduled check-ins by placing him on an ankle monitor. (Filing No. 11 at 2). The parties disagree as to how many violations there were in total but at least one, if not two, violations may have occurred after ICE placed Ferrufino Guerrero on an ankle monitor.

Under these circumstances, it is necessary for an immigration judge to hold a hearing to determine whether Ferrufino Guerrero's order of release on recognizance should be revoked or whether he should be released on bond during the pendency of removal proceedings against him.[4] Outside of narrow circumstances not present here, it is not the Court's prerogative to assume the role of immigration judge by deciding release or detention. *See Barrajas v. Noem*, 2025 WL 2717650, at *5 (S.D. Iowa Sept. 23, 2025).

Accordingly,

---

[3] Given the Court's finding that Ferrufino Guerrero is entitled to habeas relief on procedural due process grounds, it need not reach the other claim raised in his petition.

[4] As to Ferrufino Guerrero's request for attorney's fees and costs (ostensibly under the Equal Access to Justice Act (Filing No. 1 at 18)), he may move separately within thirty days of final judgment in this action to recover them. *See* 28 U.S.C. § 2412(d); 5 U.S.C. § 504.

**IT IS ORDERED:**

1. Petitioner Joseph Antonio Ferrufino Guerrero's petition for a writ of habeas corpus (Filing No. 1) is granted in part and denied in part, as set forth above.

2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations on or before June 17, 2026.

3. If the Federal Respondents do not provide Petitioner with a bond hearing as required, Petitioner must be immediately released from detention.

4. On or before June 22, 2026, the government shall provide the Court with a status update regarding the bond hearing or, if no bond hearing was held, advise the Court regarding Petitioner's release.

5. A separate judgment will be entered.

Dated this 10th day of June, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

10